# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| ELIZABETH ANN KING | § |
| | § |
| V. | § A-18-CV-581-AWA |
| | § |
| NANCY A. BERRYHILL, ACTING | § |
| COMMISSIONER OF THE SOCIAL | § |
| SECURITY ADMINISTRATION | § |

## MEMORANDUM OPINION AND ORDER

This is an appeal of a final decision of the Commissioner of the Social Security Administration denying an application for disability benefits. Before the Court are the parties' briefs (Dkt. Nos. 12, 13 & 14), as well as the administrative record (Cited as "Tr.").

## I. GENERAL BACKGROUND

Plaintiff Elizabeth Ann King protectively applied for disability insurance benefits, claiming disability beginning on September 10, 2014. (Tr. 205-06, 207-12). The Agency denied King's applications initially and on reconsideration. (Tr. 74-97, 98-129). An Administrative Law Judge (ALJ) held an administrative hearing on March 8, 2017. (Tr. 26-72). After reviewing the evidence and hearing testimony, the ALJ issued a decision on August 21, 2017, finding that King was not disabled. (Tr. 10-20). On May 9, 2018, the Appeals Council denied review, making the ALJ's decision the Commissioner's final agency decision.

King was 45 years old on the date she alleged she became disabled. (Tr. 19-20, 205). She had greater than a high school education (an associate's degree), and past relevant work experience as a receptionist, billing clerk, advertising clerk, cashier/checker, and claims examiner. (Tr. 19, 35-42, 233-34, 240-47). The ALJ issued a decision on August 21, 2017, finding that King was not disabled for the adjudicated period. (Tr. 33-43). The ALJ found that King had the severe

impairments of scleroderma, Sjogern's syndrome, Raynaud's disease with neuropathy, and bipolar disorder. (Tr. 12). The ALJ determined that King's impairments did not meet or equal an impairment found in the Appendix 1 Listing of Impairments. (Tr. 13-14). The ALJ found that King had the residual functional capacity (RFC) to perform light work that includes occasional postural activities, frequent fingering, and frequent feeling. (Tr. 14). The ALJ found that, mentally, King could perform simple tasks in a work environment free of fast-paced production requirements, make simple work-related decisions, and deal with a few, if any, work place changes. (Tr. 14-15). The ALJ further found that the evidence as a whole did not support King's subjective statements concerning the limiting effects of her impairments. (Tr. 15-19). Based on her RFC, the ALJ determined that King could not perform her past relevant work. (Tr. 19). With assistance from a vocational expert, the ALJ found that King had the RFC to perform other work existing in significant numbers in the national economy (Tr. 19-20). Thus, the ALJ concluded that King was not disabled for the adjudicated period and not entitled to DIB or SSI. (Tr. 20).

Plaintiff raises the following issues: (1) whether the ALJ properly considered the medical opinions in determining her physical RFC, and (2) whether the ALJ properly considered the medical opinions of King's treating physician in determining her mental RFC. Dkt. No. 12 at 8.

## II. STANDARD OF REVIEW

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a claimant is able to engage in "substantial gainful activity" (and therefore if he is disabled) the Social Security Commissioner uses a five-step analysis:

2

1. a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are;

2. a claimant will not be found to be disabled unless he has a "severe impairment";

3. a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors;

4. a claimant who is capable of performing work that he has done in the past must be found "not disabled;" and

5. if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

20 C.F.R. § 404.1520; *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). A finding of disability or no disability at any step is conclusive and terminates the analysis. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The claimant has the burden of proof for the first four steps; at step five, the burden initially shifts to the Commissioner to identify other work the applicant is capable of performing. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). Then, if the Commissioner "fulfills his burden of pointing out potential alternative employment, the burden . . . shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (citation omitted).

Judicial review of the Commissioner's final decision under the Social Security Act, 42 U.S.C. § 405(g), is limited to two inquiries: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner correctly applied the relevant legal standards. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997). Substantial evidence is more than a scintilla of evidence but less than a preponderance—in other words, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). The Court considers four elements of proof when determining whether

3

there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Id.* at 174. However, the reviewing court may not reweigh the evidence, try the issues de novo, or substitute its judgment for that of the Commissioner. *Greenspan*, 38 F.3d at 236. The Court may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If the Court finds substantial evidence to support the decision, the Court must uphold the decision. *Selders*, 914 F.2d at 617 ("If the . . . findings are supported by substantial evidence, they are conclusive and must be affirmed."); 42 U.S.C. § 405(g). A finding of no substantial evidence will only be made where there is a conspicuous absence of credible choices or no contrary medical evidence. *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988)

### III. ANALYSIS

King argues that the ALJ erred because: (1) the ALJ improperly rejected the opinions of two non-examining consultative medical experts regarding her physical RFC and instead relied on two evaluations from Dr. Franklin, who examined King, but did not provide a complete functional assessment; and (2) the ALJ failed to follow the treating physician rule and rejected King's treating psychiatrist's opinion about her mental RFC without good reason, thereby rendering the RFC unsupported by substantial evidence. The Commissioner argues that the ALJ's RFC finding is based on substantial evidence and that the ALJ properly evaluated the various medical opinions in determining King's RFC.

The Court finds that substantial evidence supports both the ALJ's determination that the King was not disabled during the adjudicated period and his RFC determination. While King argues that

the RFC determination was made after dismissing medical opinions in the file and that the ALJ failed to properly develop the record, the ALJ properly considered the overall record and did not rely on personal lay opinion.

A.   **The ALJ's Physical RFC Assessment**

The ALJ found that King had the physical RFC to perform light work, involving occasional postural activities (e.g., crawling, balancing, stooping, kneeling, crouching, and climbing ramps, stairs, ladders, ropes, and scaffolds), and frequent fingering and feeling. (Tr. 14). In making his RFC finding, the ALJ acknowledged that King claimed that she suffered from alleged physical impairments that affected her ability to perform most exertional and postural activities (Tr. 15, 253). The ALJ found, however, that the objective medical record and other evidence failed to support the degree of disabling physical limitation that King claimed to possess.

SSR 83-10 explains that "light work" requires that an individual be on his or her feet for about six hours of an eight hour day. King argues that the ALJ's determination that she has the RFC to do light work is not supported by any medical opinion in the record. The two agency consultants opined that King could not stand for more than two hours in an eight hour day, which does not meet the criteria of light work.[1] Claiming this opinion evidence, which the ALJ afforded partial weight, is the only evidence in the record on this issue, King asserts that ALJ erred in independently determining her RFC without proper support in the record. *Ripley v. Chater*, 67 F.3d 552 (5th Cir.1995). King argues that Dr. Franklin, the only physician who examined her, did not perform a

---

[1] Yvonne Post, D.O., a non-examining agency consultant, found that King had exertional limits as follows: occasionally lifting or carrying 20 pounds, frequently lifting or carrying 10 pounds, standing or walking a total of two hours with occasional breaks, sit for six hours in an eight hour work day with occasional breaks, unlimited ability to push or pull, and that King could stand for two hours in an eight hour day. (Tr. 80-82). Laurence Ligon, M.D., agreed with these findings. (Tr. 106-08). The ALJ gave partial, but not complete, weight to the opinions of Drs. Post and Ligon, stating that those opinions "failed to adequately consider the claimant's spinal limitations, leading to difficulty making postural adjustments, and overstates the claimant's limitations in standing and walking." (Tr. 17).

functional assessment of her limitations, and that if the ALJ believed that the state agency doctors were incorrect about King's ability to stand, he should have contacted Dr. Franklin and asked him to perform an assessment of those abilities. The Commissioner responds that the record as a whole, and Dr. Franklin's records, support the ALJ's finding, a decision that is reserved to the ALJ. *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985).

The Court finds that the ALJ properly determined King's RFC. Noting the paucity of medical records relating to King's physical abilities, the ALJ based his RFC on two consultative examinations of King by O. Martin Franklin, D.O. from June 2013 and May 2015, King's testimony, and the aforementioned opinions of the two state agency consultants, whose opinions the ALJ properly afforded partial weight. Residual functional capacity, or RFC, is defined as the most that a person can still do despite recognized limitations. 20 C.F.R. § 404.1545(a)(1). It "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). An individual's RFC should be based on all of the relevant evidence in the case record, including opinions submitted by treating physicians or other acceptable medical sources. 20 C.F.R. § 404.1545(a)(3) (2012); SSR 96-8p, 1996 WL 374184, at *1. The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ may find that a claimant has no limitation or restriction as to a functional capacity when there is no allegation of a physical or mental limitation or restriction regarding that capacity, and no information in the record indicates that such a limitation or restriction exists. SSR 96-8p, 1996 WL 374184, at *1. The ALJ's RFC decision can be supported by substantial

evidence even if she does not specifically discuss all the evidence that supports her decision or all the evidence that she rejected. *Falco v. Shalala*, 27 F.3d 16, 164 (5th Cir. 1994).

It is well-established that "the ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. The ALJ in this case noted that there were no regular treatment records. (Tr. 16). And, Dr. Franklin—who performed consultative exams on June 10, 2013, (Tr 296-98), and again on May 13, 2015 (Tr. 355-361)—did not specifically assess King's functional capacity. However, the absence of a medical source statement describing the types of work a claimant is capable of performing does not necessarily make the record incomplete. *Ripley*, 67 F.3d at 557; 20 C.F.R. § 404.1513(b)(6) (1994). Instead, in the absence of a medical statement describing the types of work that the applicant is still capable of performing, the ". . . inquiry focuses on whether the ALJ's decision is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557. To be substantial, such evidence cannot be exclusively medical, but must focus precisely on effects that medical impairments have on an applicant's ability to work. *Id.*

Thus, the Court rejects King's contention that a medical source's opinion regarding a claimant's residual functional capacity is required for a valid residual functional capacity determination. The ALJ properly relied on Dr. Franklin's findings, in conjunction with the rest of the record, in determining King's physical RFC. In his June 10, 2013, examination of King, back and spine issues were not among King's chief complaints. Franklin reported her chief complaints as: scleroderma; Raynaud's syndrome; thyroid problems; and Sjogren's disease.[2] (Tr. 296). He reported

---

[2] Scleroderma is a group of rare diseases that involve the hardening and tightening of the skin and connective tissues. Raynaud's disease is a disorder of the blood vessels, usually in the fingers and toes. It causes the blood vessels to narrow when a person is cold or feeling stressed. Sjogren's syndrome is an autoimmune disease that causes dry mouth and eyes.

7

that she had normal full range of motion for her cervical, thoracic, and lumbar spine, with some pain in her lumbar spine. (Tr. 298). He stated, "there is no spine or costovertebral angle tenderness. The patient can heel-to-toe walk and squat and rise without difficulty. Thoracic spine is nontender. Lumbar spine is nontender or spasmodic. SLR is negative bilaterally."[3] *Id.* He also stated that, "she also has generalized pain bilateral knees with full range of motion without stress pain." *Id.* He also found "the patient has a normal base and stride," and "strength is 4/5 upper and lower extremities secondary to pain and deconditioning." *Id.* This evidence does not limit King to walking and standing only two hours a day and is substantial evidence in support of the ALJ's finding that King can perform light work.

Additionally, in Dr. Franklin's second consultative exam of King, on May 13, 2015, he did not list any musculoskeletal issues in his diagnosis, other than neuropathy in King's extremities related to her Raynaud's disease. (Tr. 355-361). He reported her chief complaints as scleroderma, Raynaud's disease, and neuropathy. (Tr. 355). Although she reported pain in her lumbar, thoracic, and cervical spine in the last year, which she reported was getting worse, Dr. Franklin noted King could walk about one block, stand for 30 to 45 minutes and sit for about the same. (Tr. 355). With regard to her back, Franklin found that King had a

> stiff cervical, thoracic, and lumbar spine. She has multiple trigger points in paraspinous muscles with tenderness over spinal processes. Sacroiliacs are tender to deep palpation bilaterally. The patient can heel-to-toe walk with fair ability and hurts and squat and rise only with assistance. SLR is negative bilaterally.

(Tr. 357). For her extremities, he reported a full range of motion for wrists, fingers, elbows shoulders and knees, although with some tenderness. *Id.* He again reports her gait is normal and her strength is the same as her last visit. *Id.* On a Range of Joint Motion Evaluation Chart, Dr. Franklin

---

[3] A negative finding in a straight leg raise test is a normal result.

reported that King had a normal range of motion for all joints except her back, where she had a 60 out of 90 degree flexion range of motion. (Tr. 360). Thus, in this report, while finding that King had some pain, Dr. Franklin also found that King could stand for 30 to 45 minutes and sit for about the same. Alternating between the two means King could stand six hours of an eight hour day. The ALJ properly relied on this evidence and took King's postural limitations into account, as well as her ability to sit and stand, in assessing her RFC.

Furthermore, additional substantial evidence in the record supports the ALJ's findings regarding King's RFC. There are several references in the medical records to King being employed and owning a pet sitting business. (Tr. 16, 607, 615). King testified that she drives and goes to the grocery store often. (Tr. 44). She also testified that she goes to her brother's house to visit or to the library. (Tr. 45). King stated in the "Activities of Daily Living" questionnaire that she engaged in light cleaning and laundry. (Tr. 250).

King also complains that the ALJ improperly rejected the state agency doctors' determinations that she could walk only two hours in an eight hour work day and sit for up to six hours in an eight hour work day (Tr. 80-82), claiming that the opinions "overstate[ ] the claimant's limitations in standing and walking." (Tr. 17). This assertion is without merit. While Administrative Law Judges may not ignore the opinions of state agency medical and psychological consultants and must explain the weight given to these opinions in their decisions, *see* SSR 96-6p, 1996 WL 374180 at *2 (S.S.A. 1996), "the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record . . . ." *Id.* "In evaluating the opinion of a non-treating physician, an ALJ is free to incorporate only those limitations that he finds 'consistent with the

9

weight of the evidence as a whole.' " *Thompson v. Colvin*, No. 4:16-CV-00553, 2017 WL 1278673, at *12 (S.D. Tex. Feb. 14, 2017) (citing *Andrews v. Astrue*, 917 F. Supp. 2d 624, 642 (N.D. Tex. 2013)). Having found the state agency doctors' opinions regarding King's ability to walk, stand, and sit inconsistent with the medical evidence as a whole, the ALJ did not err in giving those opinions partial weight.

Additionally, any failure of the ALJ to re-contact Dr. Franklin was harmless. When reviewing claims of procedural error in Social Security disability cases, courts in the Fifth Circuit have applied what amounts to a "harmless error" standard of review. "[R]eversal and remand is not warranted by the mere fact that the ALJ erred procedurally." *Esparza v. Berryhill*, 2017 WL 6513634 (N.D. Tex. Nov. 27, 2017). Absent an error that affects the substantial rights of a party, administrative proceedings do not require 'procedural perfection.' " *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). "Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error." *Esparza,* 2017 WL 6513634 at *6 (citations omitted).

In this case, King asserts that the ALJ's failure to develop the record prejudiced her, as the ALJ misstated her ability to stand and walk, and, had he not made that error, her RFC would have been reduced to "sedentary." But King misunderstands her burden. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557, n.22 ; *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996) ("Brock points to no evidence that, had the ALJ developed the record further, would have been adduced at the hearing and that could have

changed the result. We will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges."). To carry her burden, King had to identify evidence that Dr. Franklin would have offered had he been contacted, that in turn could have a resulted in a different conclusion by the ALJ regarding King's ability to stand and walk. Simply claiming that had the ALJ made a different finding than he did, his conclusion would have been different, fails to do so. In fact, King says nothing regarding what Dr. Franklin would have reported had he been contacted. Accordingly, even if the ALJ erred by failing to contact Franklin, King has failed to show she suffered any harm from that error.

**B.      The ALJ's Mental RFC Assessment**

King next contends that the ALJ improperly rejected the opinions of her treating psychiatrist regarding her mental RFC without specific and legitimate reasons, thereby rendering the RFC unsupported by substantial evidence.[4] Dkt. No. 12 at 12. The Commissioner argues that the ALJ's RFC determination that King's psychiatrist's opinion regrading her RFC are overstated is supported by substantial evidence in the record.

With regard to King's mental RFC, the ALJ found that King:

can understand and follow simple directions; can perform simple tasks with or without supervision; can maintain attention and concentration for simple tasks; can regularly attend to a routine and maintain a schedule; can have only occasional interaction with co-workers, supervisors, and the public. Work should be limited to simple tasks in a work environment free of fast paced production requirements; involving only simple, work-related decisions; with few, if any, work place changes.

---

[4]The Social Security Administration published a new rule, applicable to claims filed on or after March 27, 2017, that eliminated the treating-physician rule. *See* 20 C.F.R. § 404.1520c. Because King's claims were filed prior to this date, the pre-amendment version of the rule applies here. See 20 C.F.R. § 404.1527 ("For claims filed ... before March 27, 2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in § 404.1520c apply."). *See White v. Saul*, No. 5-18-CV-00805-XR-RBF, 2019 WL 2642426, at *6 (W.D. Tex. June 26, 2019).

(Tr. 17). King was treated for bipolar disorder at Hill Country MHDD Centers beginning July 24, 2013, through July 18, 2016. (Tr. 564-577). She was treated by Dr. Marsha Wheatley from July 2013 through December 2014 (Tr. 560, 568), was then seen once by Dr. Lynne Inman in February 2015 (Tr. 569), twice by Dr. John Civello—in April and May of 2015[5] (Tr. 570-71)—and once by Dr. Kristopher Steinke in May of 2015 (Tr. 571). King was then seen by Dr. Efso Airuehia from October 2015 to April 2016 (Tr. 572-576), and by Dr. Sandra French in July of 2016 (Tr. 576).

King represented in June of 2015 that Dr. John Civello is her "primary mental health provider." (Tr. 370). The record reflects a Medical Source Statement "check the box" form, printed out on King's attorney's letterhead, signed by Dr. Civello, and dated May 28, 2015. (Tr. 372-374). As noted, Civello was one of six doctors who saw King at the Hill Country MHDD Center, and, at most, he only saw her twice. Civello opined in the Medical Source Statement that King would decompensate in a full-time work environment and would be off task fifty percent of the workday. (Tr. 372). He found she had marked limitation in her ability to maintain attention and concentration, maintain attendance, interact appropriately with supervisors and coworkers, and tolerate stress. (Tr. 373-74). On the same date, Dr. Civello filled out a Physician Progress note. (Tr. 377-380). Noting that the contact was via video, he stated that King had "no symptoms" for mania, depression, or psychosis. Under "mental status" and "appearance" he reflected that King's appearance was "neat," her eye contact "good," her attitude "cooperative," her mood "euthymic," and her affect "congruent with mood." Under "mental status" "cognitive" Dr. Civello noted that King's sensorium was "clear," her orientation "intact," her memory "intact" her attention/concentration "good," her speech

---

[5] There are no progress notes from the April visit, but the record reflects a prescription dated in April 2015 with Dr. Civello as the prescriber. The undersigned assumes Dr. Civello examined King in order to prescribe her medication.

12

"coherent" and "spontaneous," her thought processes "logical," and that she had no hallucinations, delusions, compulsions, obsessions, preoccupations, paranoid ideations, etc., rating her as having "no abnormalities" and neither suicidal nor homicidal. (Tr. 377-78). Dr. Civello then continued King on her medications. (Tr. 379). There are no other medical records from Dr. Civello, who apparently never saw King again.[6]

The ALJ accorded partial weight to Dr. Civello's[7] opinion stating that, while his opinion was consistent with his treatment notes, it was not consistent with the record as a whole. (Tr. 18). Typically, a treating physician's opinion regarding a plaintiff's impairment and RFC is awarded great weight, and in some cases should be given controlling weight if the opinion is well-supported by other clinical and laboratory diagnostic techniques, and is not inconsistent with other medical evidence in the record. *See Newton*, 209 F.3d at 455; *Greenspan*, 38 F.3d at 237. However, the ALJ is allowed to give a treating physician's opinion less weight, and even disregard a treating physician's opinion completely in some circumstances. *Brown v. Apfel,* 192 F.3d 492, 500 (1999). For an ALJ to discount the weight of a treating physician's opinion, the ALJ must show good cause, which is established when the ALJ shows the treating physician's opinions are conclusory; unsupported by medical, clinical, laboratory, or diagnostic techniques; or otherwise unsupported by the evidence. *Newton*, 209 F.3d at 456. Additionally, the ALJ can discount the opinion of a treating physician relative to another expert if the treating physician's opinions are not well supported by the evidence. *Id.*

---

[6]The handwriting and ink used to fill out the form do not appear to match the ink and handwriting for Dr. Civello's signature.

[7] It is unclear whether Dr. Civello, who had a limited relationship with King, and at most saw her twice, perhaps never in person, qualifies as her "treating physician." However, the Court assumes he was for the purposes of this argument. The ALJ refers to him as an "acceptable medical source." (Tr. 18).

In this case, the ALJ failed to give Dr. Civello's opinion controlling weight, because it was discounted by the medical records of the other Hill Country MHDD doctors who treated King over the three year period she was a patient there, and was inconsistent with the findings of the consultative psychologist who examined King. The ALJ usually must consider several factors before declining to give a treating physician's opinion controlling weight: the physician's length of treatment of the claimant; the physician's frequency of examination; the nature and extent of the treatment relationship; the support of the physician's opinion afforded by the medical evidence of record; the consistency of the opinion with the record as a whole; and the specialization of the treating physician. 20 C.F.R. § 404.1527(d)(2). However, these factors need not be considered when there is "competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," or when "the ALJ weighs treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Newton*, 209 F.3d at 458.

In this case the ALJ assigned partial weight to Civello's opinion, finding it inconsistent with the record as a whole. The ALJ cited specific treatment notes and medical records in connection with this finding. Specifically, the ALJ relied upon the competing opinion set forth in the consultative psychological exam performed by Dr. Amy Wooten in December of 2015. That opinion stated that, King "can understand, recall, and complete one to two step directions as well as multi-step, complex directions. She would likely have some mild to moderate problems sustaining focus in a work setting. . . ." (Tr. 18, 387-88). The ALJ gave Dr. Wooten's opinions partial weight and incorporated her findings into the RFC, with the exception that the ALJ found that "the evidence as a whole indicates the claimant experiences difficulty understanding and concentrating that preclude

14

her for following multi-step, complex directions." (Tr. 18). The ALJ noted that King's mental status examination was normal except that her mood appeared mildly depressed, and she had mild difficulty with planning and organization as well as concentration, insight, and judgment. (Tr. 16).

More importantly, the ALJ relied on other examining doctors' reports of King's psychological status as evidence of her mental RFC. The ALJ noted that King had a normal mental status exam in May of 2015 (Tr.16), the same month in which Dr. Civello filled out the Medical Source Statement containing his opinion of King's mental RFC. In October of 2015, King reported improvements with changed dosages of her medications. (Tr. 16). The ALJ noted that King's mental status examinations from December 2015 through December 2016 were normal, with improving mood, and mood reported as "really good" in April, July and September of 2016. *Id.* In December of 2016, King stated that she was doing "really well." *Id.* The ALJ also noted that beginning in October 2015, King was noted to be working as a pet sitter. (Tr. 17, 507, 514, 530, 534, 549, 598, 605, 613, 640, 647, 655, 682, 688, 705). In December of 2016, the psychiatrist even notes that "her pet sitting business is getting busy." (Tr. 615). The ALJ also noted that in July of 2016, King asked her psychiatrist—who she was seeing for the first time—to sign paperwork for her disability claim that King had already completed with her lawyer. The psychiatrist refused. (Tr. 551). Because the ALJ found that Dr. Civello's opinion was inconsistent with the objective medical evidence of record, he could reject Civello's opinion as not controlling without the need to perform a factor-by-factor analysis. *See Newton*, 209 F.3d at 458; *Wilson v. Colvin*, No. 3:13-CV-1304-N, 2014 WL 1243684, at 8-9 (N.D. Tex. Mar. 26, 2014).

Moreover, even if the ALJ erred by failing to conduct the *Newton* analysis, that failure was once again harmless. *See Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981). Here, the record

15

shows that had the ALJ gone through the detailed evaluation set forth in *Newton*, he would have reached the same conclusion. Civello met with King at most twice, and did so via video. These visits do not provide the "longitudinal and detailed perspective" of King's impairment sufficient to justify the assignment of controlling weight to Civello's opinion. *See McCoy v. Astrue*, 2010 WL 5812954, at *5 (N.D. Tex. Dec. 16, 2010) (no error in not assigning controlling weight to opinion of physician who examined claimant twice); *Thomas v. Colvin*, 2017 WL 1193742, at *10 (M.D. La. Feb. 24, 2017) (two treatment records dated three months apart did not require giving physician's opinion significant weight). Moreover, Civello's opinions are not supported by the medical evidence of record and are inconsistent with the record as a whole. While Civello opined that King would be unable to work on a regular basis without missing more than two days a month due to her disabilities, the record reflects that King's bipolar disorder and depression are controlled by medication. The ALJ noted that King's mental status examinations from December 2015 through December 2016 were normal, with improving mood, and mood reported as "really good" in April, July and September of 2016. (Tr. 16). In December of 2016, King stated that she was doing "really well." *Id.* As a rule, conditions that can be controlled by medication are not considered to be "disabling." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

An ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987). Based on a review of the record as a whole, and the *Newton* factors, under these circumstances, King cannot demonstrate that any error in the ALJ's failure to expressly enumerate all of the relevant *Newton* factors in conducting his § 416.927(c) analysis of Civello's opinion harmed her.

16

Based on the preceding discussion, the Court agrees with the Commissioner and finds that the ALJ did not err and his decision is supported by substantial evidence.

## V. CONCLUSION

Based on the foregoing, the Court hereby **ORDERS** that the decision of the Commissioner be **AFFIRMED**.

SIGNED this 28th day of August, 2019.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE